# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 6947 | **DATE** | 8/16/2001 |
| **CASE TITLE** | ANTHONY CHAPA vs. VILLAGE OF GLENWOOD, ET AL. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendants' motions for summary judgment [22-1] [23-1] are granted. Judgment is entered for defendants Village of Glenwood, Village of Glenwood Board of Police and Fire Commissioners, Sergeant John Buxbaum, and Chief Van DiCarlo and against plaintiff Anthony Chapa. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | AUG 2 0 2001 | 41 |
| | Notified counsel by telephone. | date docketed | |
| | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 8/16/2001 | |
| | | date mailed notice | |
| SB courtroom deputy's initials | | CB | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

FILED FOR DOCKETING
01 AUG 17 PM 6:22

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY CHAPA | ) | |
| | ) | |
| Plaintiff, | ) | No. 00 C 6947 |
| | ) | |
| | ) | Suzanne B. Conlon, Judge |
| v. | ) | |
| | ) | |
| VILLAGE OF GLENWOOD, | ) | |
| ET AL. | ) | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

Anthony Chapa sues Village of Glenwood ("the Village"), Village of Glenwood Board of Police and Fire Commissioners ("the Board"), Sergeant John Buxbaum, and Chief Van DiCarlo[1] (collectively "defendants") for employment discrimination, pursuant to 42 U.S.C. § 1983 ("§ 1983") (Count I) and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") (Count II).[2] Chapa seeks declaratory judgment, mandatory injunctive relief and damages. Defendants move for summary judgment, pursuant to Fed.R.Civ.P. 56. In Chapa's response to defendants' summary judgment motion, he concedes his claims against DiCarlo and the Board. Accordingly, summary judgment is granted in favor of DiCarlo and the Board. The remaining defendants' arguments are addressed below.

---

[1] Chapa sues Buxbaum and DiCarlo in their individual and official capacities.

[2] Chapa brings Count II solely against the Village.

1

# BACKGROUND

## I. The parties

During all relevant times, Buxbaum worked for the Village's police department. On September 9, 1996, the Village hired Chapa as a full-time police officer. He worked the day shift from December 1996 to December 1997. Buxbaum was his supervisor on the day-shift. During this one-year period, Buxbaum gave Chapa fairly high work evaluations. In December 1997, Chapa transferred to the midnight shift. Sergeant John Eagen became his supervisor. In January 2001, Chapa was promoted to a detective. Chapa is a United States citizen of Mexican national origin.

## II. Acts giving rise to Chapa's claims

As a police officer for the Village, Chapa had daily contact with Buxbaum. Chapa takes offense at several comments Buxbaum made during the course of their relationship. In summer 1998, Buxbaum and Chapa had a conversation about Chapa's swimming pool. Buxbaum asked Chapa, "How long did it take your family to jump across the river?"

On another occasion, Officer Christopher Sanchez was showing Chapa and Officer Andrew Ramirez his tactical knife in the police station breakroom. Buxbaum remarked, "Mexicans and Puerto Ricans are all the same anyway, they [would] rather carry a knife." When Buxbaum learned that Chapa did not carry a knife, he stated, "I can't believe it, a Mexican that doesn't carry a knife." On two other occasions, Ramirez heard Buxbaum comment that Mexicans and Puerto Ricans always carry knives. In the year 2000, Sanchez heard Buxbaum say at least six times that Mexicans and Puerto Ricans are all the same.

In late August or early September 1998, a Department of Public Works employee was

2

cutting grass outside the police station. Chapa, Buxbaum, and Ramirez were present. Chapa stated that he need to cut his lawn. Buxbaum remarked, "My lawn could use some of your services." Chapa perceived this comment to pertain to his Mexican ethnicity.

In January or February 1999, Buxbaum told Chapa, "Better call immigration, I hope you all have got your green cards." Prior to this date, Chapa heard Buxbaum make comments about getting a green card at least fifteen times. Chapa never found these comments to be humorous. Ramirez heard Buxbaum make comments about calling immigration and getting a green card on two or three occasions.

At some point between 1999 and 2001, the Village hired Rodney Edinburg as a police officer. Edinburg is black. After Edinburg was hired, Chapa asked Buxbaum whether he was going to hire any additional officers. Buxbaum replied, "Well, at least we have one of our minorities represented here, now we don't have to hire anymore Puerto Ricans."

In January 1999, Chapa tried to help a citizen who had locked her keys in her car. Chapa's efforts at breaking into the car were unsuccessful. Buxbaum commented to Chapa, "You're a Mexican and you can't break into a car?" On another occasion, Chapa arrested "Mr. Gonzalez," a resident living in a neighborhood known as the Point. The Point was a predominantly African American area. Buxbaum stated, "Gonzalez? Another Mexican on the Point? Well, there goes the neighborhood."

On July 4, 2000, Chapa asked Buxbaum whether there was any word on the vest cover for which he had been waiting. Chapa then asked another officer for duct tape and explained he wanted to patch up his current vest. At this point, Buxbaum yelled, "Why do you keep asking? I've been on the job 23 years and I've been wearing the same vest for 20 years. You want to see

it? Come on, son or boy." Still yelling, he took off his shirt and yelled, "Come on mother fucker!" Chapa reported this incident to DiCarlo, the department chief. Buxbaum was disciplined and received a verbal reprimand. On August 8, 2000, DiCarlo instructed Chapa to inform him of any other conduct by Buxbaum that Chapa believed was inappropriate. Chapa did not tell DiCarlo about any of the comments Buxbaum made prior to July 2000.

### III. Impact on Chapa's job

Despite the comments, Chapa and Buxbaum tolerated each other. Buxbaum trained Chapa as a DARE officer. In addition, he gave Chapa advice about the sergeants exam. Chapa did not allow Buxbaum's comments to interfere with his police-related duties. In fact, Sergeant Eagen was satisfied with Chapa's job performance.

### IV. Chapa's health

Chapa suffered from ulcers in 1997 and 1998. He began experiencing symptoms of colitis in May or June 1999. Chapa's doctor diagnosed stress-induced colitis in December 1999. In November 2000, Chapa experienced the symptoms of colitis again. His doctor informed him that he would have colitis for the rest of his life.

### V. Chapa's claims

Chapa contends defendants discriminated against him on the basis of his national origin. Chapa further contends such behavior created a hostile work environment and violated his constitutional right to equal protection. Chapa filed a discrimination claim with the Equal Employment Opportunity Commission ("EEOC") on November 3, 2000. He filed a complaint with this court on November 6, 2000.

4

## DISCUSSION

### I. Summary judgment standard

Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *King v. National Human Resource Committee, Inc.*, 218 F.3d 719, 723 (7th Cir. 2000); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Once a moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56 (e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The summary judgment standard is applied with special scrutiny to employment discrimination cases because the outcome often depends on determinations of credibility and intent. *Michas v. Health Cost Controls of Illinois*, 209 F.3d 687, 692 (7th Cir. 2000).

### II. Applicable law

Title VII provides that it is unlawful "for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Employers violate Title VII when they "create a hostile or abusive work environment"

by means of discrimination. *See Adusumilli v. City of Chicago*, 164 F.3d 353, 361 (7th Cir. 1998) (internal citations omitted) (Title VII violated when employer's sex discrimination creates hostile environment). The harassment "must be sufficiently severe or pervasive to alter the conditions of employment . . . ." *King v. Board of Regents of the University of Wisconsin System*, 898 F.2d 533, 537 (7th Cir. 1990) (internal citations omitted). In order to recover under Title VII, plaintiffs must show: (1) they perceived the work environment to be hostile and (2) a reasonable person would reach the same conclusion. *McPhaul v. Board of Commissioners of Madison County*, 226 F.3d 558, 566 (7th Cir. 2000). In determining whether the workplace is objectively hostile, courts consider "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 567 (internal citations omitted).

In order to recover under § 1983, plaintiffs must establish they were deprived of their constitutional rights by an individual acting under the color of state law. *See* 42 U.S.C. § 1983; *Pickrel v. Springfield*, 45 F.3d 115, 118 (7th Cir. 1985). Section 1983 hostile work environment claims "follow the contours of Title VII claims." *King*, 898 F.2d at 537. However, plaintiffs must establish defendants' intent to discriminate under §1983. *Id.*

### III. Statute of limitations

Under Title VII, a charge of discrimination must be filed with the EEOC within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e). Failure to meet this deadline bars any subsequent civil rights suit. *Snider v. Belvidere Township*, 216 F.3d 616, 618 (7th Cir. 2000). Chapa filed his EEOC charges on November 3, 2000. Accordingly, alleged discriminatory acts occurring before January 8, 2000 are time-barred under Title VII.

The applicable statute of limitations for § 1983 claims arising in Illinois is two years. *Johnson v. Supreme Court of Illinois*, 165 F.3d 1140, 1141 (7th Cir. 1999). Section 1983 claims accrue "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). Chapa filed his complaint with this court on November 6, 2000. Therefore, alleged discriminatory acts occurring before November 6, 1998 are time-barred under § 1983. *See e.g., Garrison v. Burke*, 165 F.3d 565, 569 (7th Cir. 1999).

Chapa asserts defendants' discriminatory behavior from summer 1998 to July 4, 2000 constitutes a continuing violation. "The continuing violation doctrine allows a plaintiff to get relief for a time-barred act by linking it with an act that is within the limitations period. . . . [C]ourts treat such a combination as one continuous act that ends with the limitations period." *Id.* Time-barred acts may be joined to an act within the limitations period only if a reasonable person would not have known a claim existed when the time-barred acts occurred. *Id.* Chapa contends Buxbaum's behavior on July 4, 2000 enabled him to realize he was the victim of discrimination. Buxbaum did not refer to Chapa's national origin on July 4. His outburst focused solely on Chapa's questions about a new vest. At most, Buxbaum's behavior constituted general harassment, which is not actionable under Title VII. *See Miller v. CCC Information Systems, Inc.*, No. 95 C 6612, 1996 WL 480370 at *3 (N.D. Ill. August 22, 1996) (words that have no objective link to discrimination fail to support a plaintiff's hostile work environment claim); *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1999) (verbal outbursts containing profanity are not, without more, discriminatory).

Chapa further contends Buxbaum would not have yelled at him about the vest but for the

7

fact that he was Mexican. However, Chapa offers no evidence to show Buxbaum treated similarly-situated officers differently. Even if Buxbaum's outburst was arguably discriminatory, the continuing violation doctrine would not apply. Buxbaum's earlier remarks implicated Chapa's national origin more obviously than the July 4 comments. When earlier acts are more serious than later acts and the later acts are not essential for plaintiffs to understand they are victims of discrimination, the continuing violation doctrine does not apply. *Minor v. Ivy Tech State College,* 174 F.3d 855, 857 (7th Cir. 1999). Chapa may not obtain relief from the time-barred acts. Accordingly, analysis of Chapa's Title VII claim is limited to Buxbaum's behavior on July 4. Analysis of Chapa's § 1983 claims is limited to Buxbaum's comments that were made after November 6, 1998.

## IV.  Analysis

### A. Section 1983

It is undisputed Buxbaum engaged in the following behaviors after November 1998: (1) In January or February 1999, Buxbaum told Chapa, "Better call immigration, I hope you all have got your green cards;"[3] (2) In January 1999, Buxbaum asked Chapa, "You're a Mexican and you can't break into a car?"; (3) Upon hiring Edinburg, Buxbaum stated, "Well, at least we have one of our minorities represented here, now we don't have to hire anymore Puerto Ricans;" (4) Buxbaum made a comment about Gonzalez being Mexican and contributing to the deterioration of a neighborhood; and (5) On July 4, 2000, Buxbaum yelled at Chapa for inquiring about a new

---

[3]Chapa offers evidence that Buxbaum made comments about getting a green card at least fifteen times prior to this date. Pl. Facts at ¶ 84. However, Chapa offers no dates when these comments were made. Therefore, the court has no way of determining whether they fall within the limitations period.

8

vest. No reasonable person could find these incidents created a hostile work environment. First, there is a line "that separates the merely vulgar and mildly offensive from the deeply offensive and . . . harassing." *Baskerville v. Culligan International Company*, 50 F.3d 428, 431 (7th Cir. 1995) (internal citations omitted). Comments must be extreme to constitute work place harassment. *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). Buxbaum's comments were vulgar and offensive but they fall short of harassing. *See Adusumilli*, 164 F.3d at 361 ("Simple teasing, offhand comments, and isolated incidents . . . unless extremely serious . . . will not amount to discriminatory changes in the terms and conditions of employment").

Second, Buxbaum's comments about minority hiring and Gonzalez were not directed at Chapa. When offensive comments are directed at someone other than the plaintiff, the impact of the comments is weaker for purposes of showing a hostile work environment. *McPhaul*, 226 F.3d at 567.

Not only were the comments lacking in severity, but they were also infrequent. Chapa offers evidence of five comments made within a two-year period. A few mildly offensive comments spread over several months does not create a hostile work environment. *See Baskerville*, 50 F.3d at 431.

Finally, for the reasons discussed in the statute of limitations section, Buxbaum's behavior on July 4, 2000 does not suggest national origin discrimination. Defendants' motion for summary judgment on Count I must be granted.

## B. Title VII

Buxbaum's behavior on July 4 is the sole basis for Chapa's Title VII claim. Accordingly, summary judgment must be granted in favor of the Village with respect to Count II. The court need not address the Village's arguments pertaining to municipal liability.

## **CONCLUSION**

Defendants' motions for summary judgment are granted.

August 16, 2001

ENTER:

Suzanne B. Conlon
United States District Judge